### THOMAS B. MURPHY

#### *v.*

### HENRY RIEMENSCHNEIDER *et al.*

*Filed at Ottawa November 20, 1882.*

1. BOUNDARY—*actual location of lots controls.*   Where the frontage of the two corner lots of a block is not given on the plat thereof, and a question arises as to the size of one of the corner lots, as affecting boundary lines between the lots, the location of the lots as actually staked must control, and the stakes between the lots, if clearly established, will settle the corners and boundaries of the lots.

2. EJECTMENT—*effect of stipulation. as to ownership of lots.*   In an action of ejectment for lots 1 and 2 in a certain block, the real object being to settle the boundary between these two lots and two adjoining lots occupied by the defendants, a stipulation was entered into that the plaintiff was the owner in fee, and entitled to the possession of lots 1 and 2, and that the defendants were the owners in fee, and entitled to the possession of the adjoining lots, 3 and 4.   The plaintiff contended, that as the defendants had not denied their possession of the first named lots by plea verified by affidavit, he was entitled to a judgment:   *Held,* that the stipulation must be regarded as constituting the issue to be tried, which was, whether defendants were in possession of any part of lot 2, and that according as that issue might be found there should be judgment.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. EDWARD ROBY, for the appellant:

The defendants having failed to deny their possession as to one of the lots, by plea verified, and the plaintiff having shown title, under the statute was entitled to recover.   Rev. Stat. ch. 45, secs. 22, 23.

When the number of the lot on a plan referred to in the deed is the only description of the land conveyed, the courses, distances, and other particulars in such plan are to have the same effect as if recited in the deed.   *Parker* v. *Bennett,* 11 Allen, 393; *Birmingham* v. *Anderson,* 48 Pa. St. 253; *Spiller* v. *Scribner,* 36 Vt. 247; *Proprietors* v. *Tiffany,* 1 Greenlf. 219;

*Thomas* v. *Patten,* (1 Shep.) 13 Maine, 329; *Hunt* v. *Rowley,* 87 Ill. 497; *Davis* v. *Ramsford,* 17 Mass. 207; *Lunt* v. *Holland,* 14 id. 149; *Morgan* v. *Moore,* 3 Gray, 319; *Farnsworth* v. *Taylor,* 9 id. 162; *Murdoch* v. *Chapman,* 9 id. 156; *Rogers* v. *Parker,* 9 id. 445; *Ferris* v. *Coover,* 10 Cal. 622; *Shirras* v. *Caig,* 7 Cranch, 48. These descriptions clearly govern in this case. *Hiner* v. *The People,* 34 Ill. 304.

Wolcott's and Greeley's plats and surveys, made in March, 1882, from the stakes driven in the plowed ground some time after the place of the original stakes had been obliterated, are not evidence upon the size, abuttals and calls of lots 1, 2, 3 and 4, of Honore's subdivision, made, platted, measured and staked in 1858. *Proprietors* v. *Tiffany,* 1 Greenlf. 219; *Thomas* v. *Patten,* (1 Shep.) 13 Maine, 329; *Lull* v. *Chicago,* 68 Ill. 521.

Their stakes and plat do not answer the calls of the plat in either abstract, therefore they must be rejected. *Coburn* v. *Coxeter,* 51 N. H. 161.

Where the plan delineates streets and alleys as calls and abuttals, and boundaries of a numbered lot, they will have that effect. *Farnsworth* v. *Taylor,* 9 Gray, 162; *Livingston* v. *The Mayor,* 8 Wend. 98; *Birmingham* v. *Anderson,* 48 Pa. 253; *Morgan* v. *Moore,* 3 Gray, 321; *Murdoch* v. *Chapman,* 9 id. 156; *Rodgers* v. *Parker,* 9 id. 445; *Alton* v. *Illinois Transportation Co.* 12 Ill. 38; *Rockwell* v. *Baldwin,* 53 id. 22; *Park* v. *Pratt,* 38 Vt. 552; 2 Washburn on Real Prop. *631, *636, (4th ed.) 403, 424; *Jacksonville* v. *Jerseyville Ry. Co.* 67 Ill. 543; *Canal Trustees* v. *Havens,* 11 id. 556; *Bowman* v. *Wettig,* 39 id. 421.

Mr. FRANCIS LACKNER, for the appellees:

In the description of land, known and fixed monuments control courses and distances. 4 Kent, 466.

Quantity, in the description of land, is never allowed to control courses, distances, monuments, or natural land marks,

such as creeks, rivers, ponds or lakes. *Bishop* v. *Morgan*, 82 Ill. 353.

.The survey, as it was actually made, is the thing, and the field notes are designed to describe and represent it, and a misdescription of the actual survey can not alter or change the survey itself. *Hiner* v. *People*, 34 Ill. 304; *Sawyer* v. *Cox*, 63 id. 136; *Miller* v. *Beeler*, 25 id. 168.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action of ejectment, by Murphy, the plaintiff, brought on July 25, 1873, to recover from the defendants possession of lots 1 and 2, in block 1, of Honore's re-subdivision of certain blocks of Tiernan's subdivision of part of section 18, town 39, range 14, in the city of Chicago. The court below, upon trial without a jury, found for the defendants, and rendered judgment accordingly, from which the plaintiff appealed.

The controversy in the case is as to the boundary line between two adjoining lots. The block in question is triangular in shape, and is bounded on the east side by Robey street, on the south side by Polk street, and on the northwest, or hypothenuse side, by Ogden avenue. The Ogden avenue front is divided into twenty-two lots. The two corner lots, numbered 1 and 22, respectively, have no dimensions marked on the map, and the interior lots, numbered from 2 to 21 inclusive, have each 24 feet front, as marked on the map. In 1858, Tiernan, the owner, made a subdivision, by which this block, thus bounded, became block 1 of Tiernan's subdivision. By this plat the block was not subdivided into lots. Afterwards, Honore, a subsequent owner, made a subdivision into lots, and the lots in question then became a part of Honore's re-subdivision of block 1 of Tiernan's subdivision. Thereafter, the defendants became the owners of lots 3 and 4, and went into possession thereof. Plaintiff having purchased lots 1 and 2, which are still vacant, claims

that his lot 1 has a frontage of 100 feet on Ogden avenue, and his lot 2 a frontage of 24 feet,—that consequently he is entitled to 124 feet on Ogden avenue. On the other hand, defendants claim that the frontage of lot 1 on Ogden avenue is but 55 feet, and that plaintiff therefore has but 79 feet front on that street,—that their occupancy commencing 79 feet from the corner, they therefore do not encroach on lot 1 or 2.

The recorded plat of Honore's re-subdivision was burned in the fire of 1871, and the original plat could not be produced, and plaintiff introduced in evidence an abstract of title which showed a plat of this re-subdivision, whereby the plat appeared to have been recorded May 21, 1858. It shows lot 1 bounded on Robey street and on Ogden avenue. There are no dimensions put upon lot 1. Lot 2 shows 24 feet front on Ogden avenue, that its lines form right angles with that avenue, and that it is bounded in the rear in part upon Robey street, and in part upon the alley running through the block. Plaintiff testifies that he bought his lots in 1868; that he visited the premises; that there were then no enclosures on the block; that the lots were staked out; that there was one stake on the north point of the lot, at the intersection of Ogden avenue and Robey street; that the next stake on Ogden avenue, on the line running south-west, was just 100 feet south-west of that on the point; that the next stake was 24 feet from the last, and was 124 feet from the stake on the point; that there was no other stake between that on the point and the one 100 feet from it. The surveyor who laid out the re-subdivision swears that he drove stakes at the corners of each lot. The plaintiff, as also the surveyor, McDermott, testifies that all the stakes on the block, except that standing on the north point of lot 1, were plowed up in 1872, and afterwards, in 1872, new stakes were driven about the block. There is no evidence in the case of the particular location of the original stakes upon

these lots, except that of plaintiff. McDermott testified that he had applied the scale to the plat in the abstract, and found the front of lot 1, on Ogden avenue, to be 100 feet by the scale. This was substantially the case made by plaintiff. Defendants introduced in evidence another abstract of title, which also shows a plat of this re-subdivision. This plat appears to agree essentially with the one shown by plaintiff's abstract, except as to the rear abuttal of lot 2,—in plaintiff's abstract it appearing to be in part on the alley and in part on Robey street, whereas by defendants' abstract the rear abuttal is wholly upon Robey street, the south line of the lot striking Robey street some distance north from the corner of the alley.

There is evidence upon the subject of the comparative accuracy of these two plats, which we will not enter into, but say that we think it shows the plat of plaintiff to be entitled to the superior credit.

But for all the evidence tending to show lot 1 to be 100 feet on Ogden avenue, there seems to be an insurmountable difficulty in the way of the admitting that extent on Ogden avenue. If that be allowed, where will lot 22, at the southwest corner, be placed? This lot appears on all the maps as of a size at least equal to that of lot 1, while the surveyors on the side of defendant make it a little larger. But the consequence of allowing lot 1 100 feet, instead of 55, would be to crowd all the lots south of it 45 feet further south, and lot 22, the last lot, would be thrown into Polk street. There is no question that the interior lots are entitled to 24 feet each, as marked on the plats. The block, by actual measurement, has 597.5 feet; thus the twenty interior lots consume 480 feet of the entire frontage, leaving but 117.5 feet to be distributed between the two corner lots, 1 and 22, which have no dimensions given on the map. The theory of plaintiff is, that lot 22 ought to be where Polk street is now,—that that street is too far north by 33.07 feet. This is founded

upon the testimony of McDermott that Polk street, as now occupied, is 33.07 feet north of where it was as laid out by the common council, and as shown by original stakes. But this theory does not fully meet the difficulty, for if lot 1 is entitled to 100 feet, lot 22 is entitled to at least as much; and even if Polk street be moved 33 feet further south, where is the additional land to come from to satisfy lot 22?

In answer to this testimony of McDermott, Greeley testifies that he laid out and staked Polk street in 1855, under the ordinance of the city, for that purpose, of April 9, 1855; that it was thrown up and graded exactly where staked, he being the city surveyor at the time, and that it is now where it then was, and has not been moved either north or south. Walcott, a city surveyor, then testifies that he assisted in staking out Polk street in 1855, and that the street is located now where it was then laid out on the ground, and that its location has never been changed.

Further, the order of the city council, by the ordinance of April 9, 1855, was to extend Polk street in a *straight line,* from Ashland avenue, which is east of Ogden avenue, to Western avenue, which is west of Ogden avenue. The street was so extended on a *straight line,* and now forms a straight line from Western avenue east to Lake Michigan. Had it been laid out 33 feet further south, where McDermott claims it should have been, it would not be one unbroken straight line.

Greeley testifies that he, in May, 1858, laid out and platted Tiernan's subdivision, and that in making the platted subdivision he had reference to Polk street as it was then, and is now, laid out on the ground; and this subdivision, the original plat of which is in evidence, gives block 1, on its north-west, a length of 594.6 feet between the actual location of Polk street and Robey street. His recent measurement makes the length 597.5 feet, but he says this discrepancy is easily accounted for by the difference of the instruments then and now in use.

It is said that Tiernan sold to Honore, and Honore abandoned Tiernan's, and made a subdivision of his own, and that to determine the calls of lots 1 and 2 in Honore's subdivision, we have nothing to do with Tiernan's plat, but with Honore's. But we understand Honore's re-subdivision to be but a subdivision into lots of Tiernan's block 1, and that for the ascertainment of the location of that block, recurrence must be had to the plat of Tiernan's subdivision. Of course, as plaintiff's counsel insists, the lots, as actually staked out in making Honore's re-subdivision, should control, and if the original stakes were indeed set, as plaintiff testifies he found them, 100 and 124 feet, respectively, from the north-east point, that would settle the controversy in plaintiff's favor. But that the original stakes were so placed would be so inconsistent and irreconcilable with the map, that we can not accept it as a fact established by the proof, that such was the location of the original stakes. This would not only be contrary to the map as lots 1 and 22 appear upon it, but, as before observed, would leave but 17.5 feet for the width of lot 22, and we well enough know that the lot could not have been laid out with only that width.

The surveyors, Greeley and Wolcott, testified that they, one in 1881, and the other in March, 1882, made surveys of block 1 of Honore's re-subdivision; that one found lot 1 to have 55 feet front, and the other found it to have 54.8 feet front, on Ogden avenue; that lot 22 had $62\frac{1}{2}$ feet on that avenue, and each lot between 1 and 22 had 24 feet front on that avenue; that they found no stakes along Ogden avenue from the north-east point until they came to lot 15, and found the stakes (apparently old stakes) all along from lot 15 to lot 22; that all the lots between 1 and 22 were occupied, and on nearly all of them houses built, each occupant having 24 feet of ground, corresponding with the stakes above mentioned, so far as stakes were found, and with their plats, which they made and produced. In view of all the circum-

stances, we think it quite as probable that the lots were originally staked out in accordance with these surveys, as that the original location of the stakes of lots 1 and 2 was at the places where plaintiff testifies he found them.

The parties entered into this stipulation in open court: that plaintiff was the owner in fee simple, and entitled to the possession, of lots 1 and 2, and that defendants were the owners in fee simple, and entitled to the possession, of lots 3 and 4, so that plaintiff claims only lots 1 and 2, and the defendants claim only lots 3 and 4, the matter at issue being only the location of the boundary between said lots 2 and 3. Plaintiff's counsel makes this point: That as defendants admit plaintiff's title and right to possession of lots 1 and 2, and have not denied by special plea, verified by affidavit, their possession, as required by section 22 of the Ejectment act, the plaintiff is, in any event, entitled to judgment, and that for that reason the judgment must be reversed. In that view, plaintiff was entitled to judgment on the stipulation, and the trial was a futile proceeding. But that was not the meaning. It must be regarded that this stipulation constituted the issue which was to be tried, and that that was, substantially, whether defendants were in possession of any part of lot 2, and that according as that issue might be found there should be judgment.

We can not say that the finding of the court below for the defendants was not sustained by the evidence, and the judgment must be affirmed.

*Judgment affirmed.*