GEORGE CURTIS, Appellant, *vs.* MARY JANE DONNELLY
*et al.* Appellees.

*Opinion filed April 20, 1916.*

1. EJECTMENT—*when judgment for defendant cannot be sustained.* A judgment for the defendant in an action of ejectment, in which the only question is the location of the true boundary line between two lots, cannot be upheld, where the preponderance of the evidence shows that the defendant is in possession of some portion of plaintiff's lot, though it does not clearly show how much.

2. SAME—*what testimony of private surveyor is admissible in dispute as to location of lot line.* In an ejectment suit over the location of a lot line, a private surveyor who made a survey for the defendant should be allowed to answer the questions whether he attempted to run the old survey or any part thereof, whether he measured any other lines in the block in which the two lots in dispute were located, and how far he measured on the line he did measure.

APPEAL from the Circuit Court of Marion county; the Hon. ALBERT M. ROSE, Judge, presiding.

KAGY & VANDERVORT, for appellant.

CHARLES H. HOLT, WILLIAM G. WILSON, and WILLIAM D. FARTHING, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellant sued appellees in ejectment in the circuit court of Marion county to recover the possession of lot 4, in block 3, of William Aird's addition to the village of Odin. Appellees are owners of lot 3 in the same block, and it lies immediately east of and adjoining said lot 4. The plea of not guilty is the only plea filed by appellees, but it was stipulated by the parties to the suit that appellant is the owner of lot 4 described in the declaration and that appellees are the owners of said lot 3; that the parties to this suit derived their titles to their respective lots from a common source, John F. Sugg, of Odin, and that the only question in dispute

is the boundary line between said lots 4 and 3. Trial by jury was waived, and the court, after hearing the evidence and the arguments, found the issues for the appellees and rendered judgment against the appellant.

Appellant contends the east boundary of his lot is east of the extended line of a certain fence lately built by appellees, $9\frac{1}{2}$ feet at the south end and $19\frac{1}{2}$ feet at the north end of his lot. Appellees claim that said fence is on the dividing line, and that the line of the fence extended is the dividing line between said lots. Under the stipulations of the parties the real question in issue is, what part of appellant's lot, if any, have appellees in their possession? *Murphy v. Riemenschneider,* 104 Ill. 520.

Appellant introduced in evidence the original plat of said addition, the record of which shows that it covers the south 742 feet of the southeast quarter of the southeast quarter of section 11, town 2, north, range 1, east of the third principal meridian, in Marion county, and that it was surveyed, at the request of William Aird, in April, 1866, by S. Frazier, county surveyor. The addition contains nine blocks and four extra lots on the west side thereof, designated as lots A, B, C and D. The south line of the addition is marked "Sec. line & northern boundary of original plat of Odin." The east line of the addition is parallel with and 20 feet west of the east line of section 11, which section line is traced on the plat and a stone shown thereon at the southeast corner of section 11. A stone is also marked on the quarter-mile line at the southwest corner of the addition. There are stones marked on the plat at the four corners of each of blocks 5 and 8, and also at the southwest and northwest corners of block 2. The north and south lines of the addition are parallel, the former being 1297 feet long and the latter 1318.5 feet, not including the 20 feet between the addition and the section line on the east. There are two streets, each 66 feet wide, running east and west across said addition, and they are crossed at

right angles by three other streets of the same width running north and south. Therefore block 3 in the northeast corner of the addition is 344 feet long on the north line and 347½ feet on the south line and block 1 in the southeast corner of the addition is 383 feet long on its south line, and lot A in the northwest corner of the addition is 55 feet wide on its north line and the south line of lot D in the southwest corner of the addition is 37½ feet long. Said block 3 and its surroundings, so far as material to this case, as appears in said record, is shown by the following plat:

P. W. Warner, county surveyor of Marion county, testified as a witness for appellant, that on May 1, 1912, he made and recorded for appellant and others a survey of said block 3, and the record of his plat and survey was introduced in evidence, and his plat as to block 3 is in all respects similar to the plat above shown. He testified that he dug into the earth and found the original corner stone at the northwest corner of lot 10 in block 2, which is 66 feet south of the southwest corner of block 3; that from that stone he surveyed west 66 feet to a point which he located as the northeast corner of block 5 in said addition; that from that point he ran a line north, and that on that line, 66 feet north of the northeast corner of block 5, he located the southeast corner of block 4, and at a point

150 feet north thereof, on said line, he located the north-east corner of block 4; that from said last corner he measured east to the section line above marked and found the distance to be 431 feet and 7 inches, or 17 inches more for that line than is shown by the original survey of Frazier; that he then ran a line from the southeast corner of block 4 as he had located it, east to said section line, and found a gain on that line of 12 inches over the showing made by Frazier in his survey; that he did not apportion the gain found by him to the lots of block 3 but left it all on the east side of lot 1; that after locating the northwest and southwest corners of block 3 by measuring 66 feet east of the northeast and southeast corners of block 4, he then proceeded to survey and locate lots 7, 6, 5, 4, 3, 2 and 1 as shown in the above plat and gave them the same dimensions as are shown in the above plat, and that he established a line between said lots 3 and 4 in block 3 and drove iron pins on said line at the north and south lines of said lot. He also testified that he could not find any of the original corner stones at the corners of block 5 or at the corners of any other of the blocks of the addition, but that he did locate the stone at the southeast corner of section 11 and traced the section line north to the first quarter and half mile corner, where he also found the original corner stones. He gave as his reason for leaving the supposed gain all to the east of lot 1 unapportioned, that the apportionment thereof would necessarily place the east line of said lot 4 still further east, which would perhaps bring differences and difficulties, and that he could give every owner of the seven lots his proper amount of ground without such apportionment. The testimony of this witness clearly shows that appellees were in possession of a part of the east side of appellant's lot 4 of something near the same width as claimed by the appellant, as the testimony further shows that the line established by the surveyor as the east line of lot 4 is about 9½ feet east of the fence built by

appellees at the south end of the lot and about 19½ feet
east of the fence at the north end of the lot, without tak-
ing any account of the unapportioned gain in this block
left on the east side thereof. The witness is corroborated
by his chainman who assisted in carrying the chain and by
other witnesses who witnessed the same, as to how the sur-
vey was made.

In rebuttal of the foregoing evidence, E. C. Toothacre,
another surveyor, testified for appellees that he measured
the south side of said block 3 on the south line thereof be-
ginning 14 inches east of the east side of the concrete walk
on the east side of Green street, which he treated as the
southwest corner of said block 3, and that from that point
he measured east, and after allowing to each lot owner of
said seven lots the number of feet as shown by the original
survey of said block that belonged to each lot owner, he
found that the measurement corresponded very closely to
the lines of lots 7, 6, 5 and 4 and the west line of lot 3 as
claimed by appellees. This was the full extent of his sur-
vey, as he did not attempt to locate any lines or corners in
said block and did not even measure the north side of the
block, and, so far as this record shows, did not measure
as far east as the section line. He gave as his reason for
beginning 14 inches east of the concrete walk in question,
that he understood that the walk was built 14 inches west
of the east line of Green street. Other witnesses testified
in rebuttal of his testimony, including the man who con-
structed the walk, that it was built 10 or 11 feet west of
the property line on the east side thereof because some of
the parties would not move their fences. Other witnesses
for appellees and for appellant testified that after the orig-
inal addition was platted, dwelling houses were built on
lots 3 and 4 and at a later period were removed, when all
of block 3 became pasture land for a number of years.
This accounts, perhaps, for the obliterating of most all of
the lot lines and corners. Several witnesses for appellees

attempt to give from memory the spots on which the houses were formerly built, but their evidence clearly shows that they could not accurately locate those spots, and they do not even claim accuracy in the location thereof.

The evidence of appellees fails to show that there was any location of the line between said lots 4 and 3 by agreement, as claimed by them. It is clearly apparent, therefore, that the testimony of the witnesses for appellees is not sufficient to overcome the testimony of the county surveyor and the other witnesses who testified for appellant, no matter how truthful and conscientious they may be, and that the court erred in not finding the issues for appellant.

The court also erred in sustaining certain objections to competent testimony, by which he refused to allow the surveyor for appellees to testify as to whether or not he attempted to run out the old survey or any part thereof, and refused to permit him to testify if he measured any other lines across block 3 and how far he measured on the line he did measure.

From the testimony in this record, while it is clearly shown by the testimony of the county surveyor that appellees are in possession of a part of said lot 4, it does not satisfactorily show the exact amount of said lot they have in their possession. The original plat does not show, by any statements of the surveyor, the beginning point for that survey. A careful study of the plat, however, shows reasonably certain that the beginning point of that survey was the stone at the southeast corner of section 11. It also shows that the reason for leaving the odd-shaped lots on the east and west sides of the addition was to cause the north and south streets to cross the east and west streets at right angles, thereby making all the inner lots and blocks rectangles. There is one sentence written across the face of the plat which has much significance, to-wit: "Stones are planted wholly in the streets and against the cor. stones

and should never be dug up for fencing." The size of the stones is not given, but it appears from said statement that beside every corner stone indicated on the plat there is also a stone "wholly within the street." This might account for the supposed gain in block 3 found by the county surveyor. To obtain an accurate survey of block 3, or the most accurate survey possible, would seem to require the surveyor to begin at the corner stone at the southeast corner of section 11 and to trace the section line thence north to the north line of said addition and from thence to trace a line along the north side of the addition to the northwest corner of block 3, and then, after tracing a line from said section corner to the southwest corner of block 1, to run a line to the northwest corner of block 3. Then, by measuring from the northwest corner of block 2 on said last line east to the section line and noting whether or not the said east line has the proper length as shown by said original survey, and also noting how said lines correspond with the original corner of block 2 found by the county surveyor, a very accurate survey ought to be obtained. It may be possible that the surveyor found the stone "wholly within the street" there, instead of the true corner stone against which the original street marker stone was placed. The survey might otherwise be tested by measuring from said corner stone across to the west side of the addition and see how it compares with other known corners and street and lot lines west thereof, if any of them are definitely known.

For the foregoing reasons the judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*